ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

FILED

Oct 11 2023

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

MJ 23-06035

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> NINA JEAN TAFARELLA <br><br> Defendant. | CASE NO. CR23-00352 CRB <br><br> VIOLATIONS: <br> 18 U.S.C. § 1343 – Wire Fraud; <br> 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Forfeiture Allegation <br><br> SAN FRANCISCO VENUE |

## INDICTMENT

The Grand Jury charges:

### Introductory Allegations

At all times relevant to this Indictment:

1. Defendant Nina Jean TAFARELLA resided in Fortuna, California and Carlotta, California, both of which are in the Northern District of California.

2. TAFARELLA had accounts with U.S. Bank ending in x9712, x0811, and x8591. TAFARELLA also had a PayPal account ending in x0197. TAFARELLA operated an unregistered business called Clean Books Now.

3. Victim Organization 1 is a 501(c)(3) nonprofit organization with its primary place of business in Eureka, California, in the Northern District of California.

INDICTMENT

4. Victim Organization 2 is a 501(c)(3) nonprofit organization with its primary place of business in Ferndale, California, in the Northern District of California.

### Scheme to Defraud Victim Organization 1

5. Between in or about April 2021 and in or about November 2021, defendant TAFARELLA used her position as bookkeeper to defraud Victim Organization 1 out of approximately $23,432.62 through false and fraudulent pretenses, representations, and promises, and by omission and concealment of material facts. As part of her scheme, TAFARELLA would enter a fake bill to herself as a vendor in QuickBooks, an accounting software used by Victim Organization 1; issue a check to herself using the fake bill as cover for the check; and then further conceal the payment to herself from Victim Organization 1 by making further fraudulent and false adjustments to entries in QuickBooks. Overall, TAFARELLA issued approximately 26 checks to herself throughout her scheme.

6. From in or about February 2021 and continuing through February 2022, TAFARELLA worked part time for Victim Organization 1 as a bookkeeper. Her duties included processing payroll, filing quarterly and payroll income taxes, tracking various funds, preparing reports for board meetings, paying Victim Organization 1's bills, making bank deposits, and other general accounting matters. TAFARELLA was also responsible for maintaining the QuickBooks account. During her employment, TAFARELLA used the QuickBooks "admin" account associated with Victim Organization 1. The "admin" account access at Victim Organization 1 was limited. From February 2021 through October 2021, only one other person, E.K., had access. E.K. did not use the account to make any accounting entries. Additionally, in October 2021, TAFARELLA began training T.R. to take over as bookkeeper, and T.R. was given access to the QuickBooks "admin" account.

7. As part of and in furtherance of her scheme to defraud, TAFARELLA would enter a fake bill to herself as a vendor in QuickBooks and then issue a check to "pay" the bill. These checks were made out to TAFARELLA, and she either cashed these or deposited in her U.S. Bank account x9712. TAFARELLA had access to Victim Organization 1's checks, including pre-signed batches of checks, which the two authorized signers of Victim Organization 1's bank accounts occasionally pre-signed. TAFARELLA was not a signer on Victim Organization 1's bank account. Additionally, some of the checks made out to TAFARELLA had forged signatures.

8. TAFARELLA employed various methods to conceal this fraud, including:

   a. Deleting the check and bill from QuickBooks;

   b. Voiding the check by replacing her name with the name of a different vendor and changing the value of the expense to $0 or another amount;

   c. Changing the check numbers of legitimate payroll checks to the fraudulent check numbers issued to herself;

   d. Using old, uncleared checks to make the monthly reconciliation balance; and

   e. Altering bank statements with white-out.

9. In addition to manipulating the QuickBooks accounts, TAFARELLA instructed Victim Organization 1 employees to rely only on the QuickBooks documents rather than bank account statements without revealing TAFARELLA's fraudulent entries and false statements that she made in QuickBooks. TAFARELLA told Victim Organization 1 employees that the bank statements did not reflect all the deposits and payments and were therefore less accurate than the manipulated QuickBooks records.

10. As part of her scheme to defraud, TAFARELLA made materially false and fraudulent statements, representations, and promises, and omitted and concealed material facts in order to deprive Victim Organization 1 of money and divert it to her own personal use. TAFARELLA used the money she received from Victim Organization 1 on personal expenditures, including Amazon purchases, restaurants, and gambling.

11. Having devised and intending to devise this scheme and artifice to defraud, and to obtain money and property from investors by means of false and fraudulent pretenses, representations, and promises, TAFARELLA transmitted and caused to be transmitted, by means of wire and interstate and foreign commerce, writings and other signs, signals, pictures, and sounds, for the purpose of executing the scheme and artifice to defraud as further alleged herein. These wire transmissions included those made when she deposited checks into her U.S. Bank accounts at ATMs in the Northern District of California, and U.S. Bank routed these funds through its servers in Kansas and Minnesota.

## Scheme to Defraud Victim Organization 2

12. Between in or about February 2021 and continuing through in or about November 2022, TAFARELLA used her position as bookkeeper to defraud Victim Organization 2 out of approximately

over $430,000 through false and fraudulent pretenses, representations, and promises, and by omission and concealment of material facts. In her position with Victim Organization 2, TAFARELLA was in charge of accounting, including managing the QuickBooks account and payroll, and all HR tasks.

13. TAFARELLA began defrauding Victim Organization 2 in the same way as she defrauded Victim Organization 1: by issuing fraudulent checks to herself printed from QuickBooks entries.

14. In the first part of her scheme involving Victim Organization 2, TAFARELLA entered payments into QuickBooks as legitimate payments. She would then go into QuickBooks and change the payment to a different vendor. TAFARELLA then cashed or deposited the checks generated as a result of her QuickBooks manipulation and false statements—which totaled approximately $6,983.75—into her U.S. Bank account ending in x9712.

15. Later, TAFARELLA continued her fraud against Victim Organization 2 by devising and implementing a new "ghost payroll" scheme to defraud Victim Organization 2 out of more money and transfer the money to herself. TAFARELLA was responsible for processing Victim Organization 2's employees' timesheets and entering their hours into QuickBooks. TAFARELLA would select the "run payroll" option in QuickBooks, which would then automatically issue the payroll payments. When TAFARELLA first started the ghost payroll scheme, she recorded payments as a payroll check to her initials (NJT) in the accounting system. TAFARELLA would later change the payments to the name of one or more fake employees. TAFARELLA often used fake employee names that were similar to real employee names by adding the middle initial "J" to an otherwise real employee name. The fraudulent payments were then wired to TAFARELLA's U.S. Bank account ending in x9712. Eventually TAFARELLA stopped recording payments under her initials and began recording the payments straight to the fake employee names. These fake employees in QuickBooks were all linked to TAFARELLA's bank account. TAFARELLA used at least seven fake employee names, all of which are linked to TAFARELLA's bank account. Towards the end of the scheme, TAFARELLA started entering fake payments under the name "Internal Revenue Service EFTPS", which was linked to her bank account x9712 and her PayPal account ending in x0197.

16. TAFARELLA employed various methods to conceal this fraud, including:

    a. Making and causing to be made fake entries into QuickBooks associated with fake

INDICTMENT 4

vendors and fake employees;

    b.    Using fake employee names that sounded like real employee names;

    c.    Using the name "Internal Revenue Service EFTPS" to disguise the payments as IRS expenses;

    d.    Altering QuickBooks records to put in fake names and social security numbers;

    e.    Creating fake social security numbers for the fake employees, including the employee "Internal Revenue Service EFTPS," many of which were 111-22-333;

    f.    Altering journal entries and reports;

    g.    Reporting the fake payroll employees to the State of California and IRS; and

    h.    Creating false financial reports.

17. TAFARELLA was responsible for creating financial reports that were presented to the Board of Directors of Victim Organization 2. TAFARELLA would send some of her reports in Excel format rather than auto-generating them in QuickBooks. These reports were sent to the Finance Committee who then presented the reports to the Board of Directors. The reports contained materially false and fraudulent information, including overstating the balance by approximately $346,000.

18. In total, TAFARELLA sent herself approximately $404,298.07 in ghost payroll payments for which Victim Organization 2 paid approximately $20,681.73 in payroll taxes.

19. As part of her scheme to defraud, TAFARELLA made materially false and fraudulent statements, representations, and promises, and omitted and concealed material facts in order to deprive Victim Organization 2 of money and divert it to her own personal use. TAFARELLA used the money she received from Victim Organization 2 on personal expenditures, including Amazon purchases, restaurants, and gambling.

20. Having devised and intending to devise this scheme and artifice to defraud, and to obtain money and property from investors by means of false and fraudulent pretenses, representations, and promises, TAFARELLA transmitted and caused to be transmitted, by means of wire and interstate and foreign commerce, writings and other signs, signals, pictures, and sounds, for the purpose of executing the scheme and artifice to defraud as further alleged herein. These wire transmissions include wire transfers of funds between Victim Organization 2 and TAFARELLA's bank account, both of which used

INDICTMENT    5

U.S. Bank. U.S. Bank processes wires through its servers in Kansas and Minnesota.

COUNTS ONE THROUGH FIVE:   (18 U.S.C. § 1343 – Wire Fraud)

21.   Paragraphs 1 through 20 of this Indictment are re-alleged and incorporated as if fully set forth here.

22.   Beginning in or about April 2021 and continuing through in or about November 2022, in the Northern District of California and elsewhere, the defendant,

NINA JEAN TAFARELLA

knowingly and with the intent to defraud participated in, devised, and intended to devise a scheme and artifice to defraud as to a material matter, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by means of omission and concealment of material facts.

Execution of the Scheme

23.   On or about the dates set forth in the separate counts below, in the Northern District of California and elsewhere, for the purpose of executing the aforementioned scheme and artifice to defraud and attempting to do so, the defendant,

NINA JEAN TAFARELLA

did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of a wire communication, certain writings, signs, signals, pictures, and sounds, specifically:

| Count | Date | Description of Wire |
|---|---|---|
| 1. | 6/3/2021 | $1,569.39 wire transfer from deposit of check in TAFARELLA's U.S. Bank account x9712 |
| 2. | 9/10/2021 | $895.00 wire transfer from deposit of check in TAFARELLA's U.S. Bank account x9712 |
| 3. | 1/20/2022 | $3,652.50 electronic deposit from Victim Organization 2's payroll into TAFARELLA's U.S. Bank account x9712 |
| 4. | 6/8/2022 | $4,082.00 electronic deposit from Victim Organization 2's payroll into TAFARELLA's U.S. Bank account x9712 |
| 5. | 10/13/2022 | $3,251.75 electronic deposit from Victim Organization 2's payroll into TAFARELLA's U.S. Bank account x9712 |

All in violation of Title 18, United States Code, Section 1343.

//

FORFEITURE ALLEGATION:       (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

24. The allegations contained in this Indictment are re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

25. Upon conviction for any of the offenses set forth in this Indictment, the defendant,

NINA JEAN TAFARELLA

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real or personal, constituting, or derived from proceeds the defendant obtained directly and indirectly, as the result of those violations, including but not limited to money and property taken by TAFARELLA and/or a forfeiture money judgment of $456,911.47.

26. Upon conviction for any of the offenses set forth in this Indictment, the defendant, If any of the property described above, as a result of any act or omission of the defendant:

    a.    cannot be located upon exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

27. All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Federal Rule of Criminal Procedure 32.2.

//
//
//
//
//

DATED: October 11, 2023

A TRUE BILL.

/s/ Foreperson
FOREPERSON

ISMAIL J. RAMSEY
United States Attorney

/s Kelsey C. Davidson
KELSEY C. DAVIDSON
Assistant United States Attorney

INDICTMENT                                   8